IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SALVADOR FRANCO-GOMEZ,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI L. NOEM, Secretary of the United States Department of Homeland Security,<br><br>JOSHUA JOHNSON, Acting Field Officer of Immigrations and Customs Enforcement, Enforcement and Removal Operation, Dallas Field Office,<br><br>VIC REGALADO, Tulsa County Sheriff,<br><br>    Respondents. | Case No. 25-cv-243-CVE-MTS |

**The United States of America's Response in Opposition to Petitioner's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief**

Pursuant to the Court's *Order Directing Respondents to Show Cause* (Doc. 5), the United States of America ("United States"),[1] files this Response in Opposition to Petitioner's *Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief* ("Petition", Doc. 1).

Mr. Franco-Gomez's Petition should be dismissed because, first, ICE had the authority to detain him and cancel his immigration court bond. Second, Mr. Franco-Gomez failed to exhaust his remedies in his immigration court removal proceedings,

---

[1] On behalf of Kristi L. Noem, Secretary of the U.S. Department of Homeland Security; and Joshua Johnson, Acting Field Officer of Immigrations and Customs Enforcement ("ICE"), Enforcement and Removal Operation, Dallas Field Office.

the proper forum for him to seek any relief regarding his immigration removal proceedings. Specifically, Mr. Franco-Gomez has failed to request in the immigration court to be released on his own recognizance or under parole and has failed to request a low bond or reasonable condition of supervision. *See* Doc. 1 at 12. Further, this Court should not assume jurisdiction of this matter as it is not properly before this Court and is suited for the immigration court. Third, this Court should not issue a preliminary injunction as Mr. Franco-Gomez <u>cannot</u> <u>show</u> he will suffer irreparable harm, he is likely to prevail on the merits, the balancing of the potential harms weigh in his favor, and that the public interest favors granting his requested relief. Finally, Mr. Franco-Gomez should not be awarded reasonable costs and attorney's fees under the Equal Access to Justice Act, Title 28 U.S.C. § 2412 ("EAJA") or otherwise.

## Facts

Mr. Franco-Gomez provided the Court with a brief procedural background and facts. *See* Petition, Doc. 1 at 2-5 (Section II at ¶¶ 1-10). The United States supplements the record with the Declaration of Joshua D. Johnson, Acting Field Office Director, Department of Homeland Security, Immigration and Customs Enforcement, attached as Exhibit 1. Mr. Franco-Gomez entered the country without inspection in 1992, has been in immigration proceedings since 2012, and has no final order of removal. Exh. 1 at ¶ 5-20. Mr. Franco-Gomez will soon be scheduled for an immigration court hearing where he can pursue any application for relief to which he is eligible including his release by reinstatement or reissuance of bond. *Id.* at ¶ 19.

## Argument

I.  **ICE lawfully detained Mr. Franco-Gomez, cancelling his immigration court bond.**

Title 8, U.S.C. Section 1226(a) governs detention and release of aliens who are the subject of pending removal proceedings. Section 1226(a) provides that on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a)(2). Except in circumstances where detention is mandatory, the Attorney General "may continue to detain the arrested alien," 8 U.S.C. § 1226(a)(1), and "may release the alien on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," 8 U.S.C. § 1226(a)(2)(A). At any time, the Attorney General may also revoke such a bond, re-arrest the alien under the original warrant, and detain the alien. 8 U.S.C. § 1226(b).

Congress granted ICE the authority to revoke the bond of a released alien and to place him in detention. The statutory language of 8 U.S.C. § 1226(b) is clear and unambiguous: "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." This clear statutory language is presumed to mean what it says. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992).

ICE acted well within its statutory authority to revoke Mr. Franco-Gomez's bond after observing that the immigration court had denied his I-485 application, and possessed the authority to again detain him to enforce his removal order. Consistent

3

with the statutory authority of Section 1226(b), the relevant regulations explain that when an alien in immigration detention has been released on bond, "such release may be revoked at any time in the discretion of [certain immigration officers], in which event the alien may be taken into physical custody and detained." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). When an alien is taken back into custody, "any outstanding bond shall be revoked and canceled." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

ICE's authority to revoke bond—even a bond set by an immigration judge—is well established and beyond dispute. *See Matter of Sugay*, 17 I. & N. Dec. 637, 639 (BIA 1981) (finding "without merit [the alien's] counsel's argument that the District Director was without authority to revoke bond once an alien has had a bond redetermination hearing" before an immigration judge); *Matter of Valles-Perez*, 21 I. & N. Dec. 769, 772 (BIA 1997) ("the regulations presently provide that when an alien has been released following a bond proceeding, a district director has continuing authority to revoke or revise the bond, regardless of whether the Immigration Judge or this Board has rendered a bond decision"); *Id*. ("the fact that an Immigration Judge or this Board may have entered a bond decision does not impede the district director's jurisdiction . . . to modify a bond or to consider a reapplication for the modification of bond conditions"). Moreover, an alien whose bond has been revoked after previously being ordered released by an immigration judge is not without recourse—he is permitted to seek a new custody determination at any time during the proceedings by again seeking release by an immigration judge at a bond hearing. *See* 8 C.F.R. § 1003.19.

ICE's actions here are consistent with *Matter of Sugay*. In 1981, the ("Board of Immigration Appeals") BIA interpreted the prior regulation, 8 C.F.R. § 242.2(b) (1981) (now 8 C.F.R. § 236.1(c)(9)), to mean that INS could revoke a bond even if there was a redetermination hearing by an immigration judge; that is, where an immigration judge set bond. *See Matter of Sugay*, 17 I. & N. Dec. at 639. The Board has never explicitly limited the regulation to mean that DHS may revoke bond only where there are changed circumstances relating to the bond decision. *See Id*. at 640 ("While we recognize **counsel's argument** that where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change in circumstances, we find in the instant case that the newly developed evidence[, among other things,] . . . represent a considerable change in circumstances which justify the District Director's decision[.]") (emphasis added). Other courts have found the imposition of a change in circumstances requirement unenforceable. *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, n.19 (S.D.N.Y., Dec. 27, 2018) (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). Assuming, *arguendo*, that even if a change of circumstance was found to be necessary, the immigration court's denial of Mr. Franco-Gomez's I-485 application further justifies ICE's actions in detaining him (cancelling his bond). *See* Declaration at ¶¶ 15-16. In sum, ICE acted within its authority to detain Mr. Franco-Gomez, cancelling his immigration court bond.

## II.     Mr. Franco-Gomez must exhaust his remedies in the immigration court.

This Court lacks jurisdiction in this action because Mr. Franco-Gomez has failed to exhaust his remedies in immigration court, the proper forum for any relief to his immigration removal proceedings. Courts generally require immigration detainees to exhaust administrative remedies before seeking habeas relief in federal district court. *See Jean-Claude W. v. Anderson*, No. 19-16282 (KM), 2021 WL 82250, at *2 (D.N.J. Jan. 11, 2021) ("To have jurisdiction to consider whether [petitioner] was denied due process, … I must confirm that [petitioner] has exhausted all available administrative remedies; if he has not, then I cannot review the merits of his claim." (citing *Yi v. Maugans*, 24 F.3d 500, 503-04 (3d Cir. 1994); *Okonkwo v. INS*, 69 F. App'x 57, 59-60 (3d Cir. 2003))). "Because the exhaustion requirement is jurisdictional, the failure of a habeas petitioner to present his [or her] claims first to the immigration courts is 'fatal to the District Court's jurisdiction over [the petitioner's] habeas petition.'" *Jelani B. v. Anderson*, No. 20-6459 (SDW), 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020) (quoting *Duvall v. Elwood*, 336 F.3d 228, 233-34 (3d Cir. 2003)).

Mr. Franco-Gomez was detained under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et. seq.* (as amended). *See* Petition at ¶ 21. Where, as here, a noncitizen detained under § 1226(a) is denied bond, the noncitizen may seek review of that decision with the BIA. *See* 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3) ("Appeal to the BIA"). Mr. Franco-Gomez's immigration court bond was cancelled upon his detention on May 14, 2025. *See* Petition at ¶¶ 7-8. Mr. Franco-Gomez has not yet been scheduled for an immigration court hearing, but there he will be able to

6

pursue his Form EOIR-42B, his Form I-485, and any other application for relief to which he is eligible in his immigration court proceedings including his release by reinstatement or reissuance of bond. Exh. 1 at ¶ 19. Depending on the decision(s) of the immigration judge, Mr. Franco-Gomez would then be entitled to an appeal to the BIA for any decisions on bond issued by the immigration court.

Critically, Mr. Franco-Gomez does not allege that he sought initial relief in the immigration court following this detention or filed an appeal with the BIA.[2] Instead, he summarily concludes that as a habeas petitioner he is not required to exhaust remedies since exhaustion would be futile. Doc. 1 at ¶ 27. Mr. Franco-Gomez glosses over his requirement to exhaust his remedies. By failing to seek any relief from this detention in the immigration court, he has failed to exhaust his available administrative remedies; thus, the Court should dismiss Mr. Franco-Gomez's instant claims challenging to his current detention status and request for bond as they lack subject-matter jurisdiction. *See Jean W. v. Ahrendt*, No. 21-365 (KM), 2021 WL 707745, at *1 (D.N.J. Jan. 14, 2021) ("To the extent Petitioner seeks to challenge the constitutionality of the bond hearing he received and request a second bond hearing, he may do so … after he has exhausted his administrative remedies."); *see also Bravo v. Green*, No. 16-4937 (JLL), 2017 WL 2268315, at *3 (D.N.J. May 24, 2017) (holding that a petitioner who "could have, but did not, present his procedural claim

---

[2] To the contrary, Mr. Franco-Gomez concedes that an appeal to the BIA is the appropriate avenue of relief, followed by a challenge to a removal proceeding in the court of appeals—noting "that Congress intended to channel immigration disputes into administrative proceedings." *See* Doc. 1 at ¶ 19.

7

to the [BIA]" has not unexhausted the claim and cannot litigate the claim "until such time as he does exhaust his administrative remedies"). This action should be dismissed for lack of subject-matter jurisdiction, as Mr. Franco-Gomez can pursue any relief related to his removal proceedings in immigration court.

### III.    Mr. Franco-Gomez cannot meet any requirements for injunctive relief.

The Petition speculates that if Mr. Franco-Gomez is removed to Texas he will then be removed to Mexico while his current immigration hearing remains pending.[3] Doc. 1 at 2. Mr. Franco-Gomez also complains that he will not receive any due process unless the Court grants him the requested relief. Doc. 1 at 1-2, 9-10.

**A. Mr. Franco-Gomez cannot show he will suffer irreparable harm.**

Mr. Franco-Gomez's allegations of irreparable harm of removal and transfers without any due process carry little weight. Doc. 1 at 1-2, 9-10. As explained above, the process provided to Mr. Franco-Gomez is adequate to provide him notice and opportunity to meaningfully seek any relief in immigration court (as articulated above). The constitutional adequacy of the immigration court's process (which he has previously availed himself of) refutes any allegation that he will not receive the same due process when he pursues it in immigration court. Case in point, the last time Mr. Franco-Gomez sought a bond in immigration court he received it.

---

[3] Rather than address Mr. Franco-Gomez's due process protections built into the immigration court (to which he previously availed himself), the Petition concludes that "there is a high likelihood that Petitioner will not be given any due process." Doc. 1 at 2. Without citation, the Petition generically states that "Courts around the United States have already granted relief based on similar circumstances). Doc. 1 at 2 n.1.

Nor has Mr. Franco-Gomez made a showing of likely irreparable harm from any transfer to Texas or otherwise. Doc. 1 at 1-2, 9. Again, he cites no evidence properly before this Court, instead generically referring to other courts and cases. *Id*. "Removal does not by itself ordinarily constitute irreparable harm." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Nevertheless, Mr. Franco-Gomez emphasizes a lack of process he may face if transferred. Doc. 1 at 1-2, 9-10.

Failing to make those showings, Mr. Franco-Gomez's general complaint smacks of a general "burden of removal." *See Nken*, 556 U.S. at 435. As the Supreme Court held, "it is accordingly plain that" such a burden "cannot constitute the requisite irreparable injury." *Id*. Accordingly, Mr. Franco-Gomez has not made a showing of irreparable harm.

### B. Mr. Franco-Gomez cannot demonstrate that he is likely to prevail on the merits.

The United States demonstrated above how (i) ICE has the authority to detain Mr. Franco-Gomez regarding his removal proceedings and (ii) that this Court lacks subject-matter jurisdiction over any relief available in his immigration court removal proceedings (primarily due to his failure to exhaust remedies). Thus, Mr. Franco-Gomez cannot demonstrate he is likely to prevail on the merits of his Petition.

### C. The balancing of harms and public interest favors the United States.

Should this Court grant Mr. Franco-Gomez the relief he seeks (release or bond), the District Court would be harmed by a deluge of similar immigrations cases that are specifically designated for the immigration court.

If the Court were to order a bond hearing on Mr. Franco-Gomez's underlying habeas Petition—which it should not—the Court should decline to conduct the bond hearing and defer to the immigration court and its "expertise, familiarity, and authority" regarding bond hearings. *Smith v. Ogle*, No. 3:21-cv-01129, 2023 U.S. Dist. LEXIS 82467, at *20–21 (M.D. Pa. Jan. 3, 2023) ("an immigration judge"—not the district court—"should conduct the bond hearing"); *Ahad v. Lowe*, 235 F. Supp. 3d 676, 679 n.1 (M.D. Pa. 2017) (declining to retain jurisdiction over petition "in the event the immigration judge fails to" conduct the ordered bond hearing, and deferring to the immigration court's "expertise, familiarity, and authority" on immigration matters, while noting that district court-led bond hearings would "amount to an entirely inefficient allocation of public resources") (quotations omitted).

Were the Court to wade further into the practice of bond hearings in immigration-related cases, or hold such hearings itself, it would likely face a deluge of requests from other Oklahoma detainees—and be forced to spend considerable time and resources scheduling, preparing for, and holding such hearings.

It is well-settled that the public interest in enforcement of United States immigration laws is significant. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."); *see also Nken*, 556 U.S. at 435 ("There is always a public interest in prompt execution of removal orders: The continued presence of an

10

alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and permit[s] and prolong[s] a continuing violation of United States law." (internal marks omitted)). Injunctive relief would circumvent the United States' statutory authority to detain and remove aliens from the United States. Under these circumstances, an injunction does not serve the public interest. Because Petitioner cannot show that the balance of hardships and public interest tips in his favor, the Court should deny Mr. Franco-Gomez's request for preliminary relief.

## Conclusion

The Petition should be dismissed because, first, ICE has the authority to detain Mr. Franco-Gomez, cancelling his immigration court bond. Second, Mr. Franco-Gomez failed to exhaust his remedies in his immigration court removal proceedings, the proper forum for him to seek any relief regarding his removal. Third, the Court should not award any injunctive relief as Mr. Franco-Gomez cannot meet the necessary elements. Finally, Mr. Franco-Gomez should not be awarded reasonable costs and attorney's fees under the EAJA or otherwise.

The United States respectfully requests the Court deny the Petition and all the relief sought therein.

Respectfully submitted,

UNITED STATES OF AMERICA
Clinton J. Johnson
United States Attorney

s/ Nolan M. Fields IV
Nolan M. Fields IV, OBA No. 31550
Assistant United States Attorney
110 W 7th St, Ste 300, Tulsa, OK 74119
918-382-2700 | Nolan.Fields@usdoj.gov