70CDCR21DIG000001
INTERGOVERNMENTAL SERVICE AGREEMENT
BETWEEN THE
U.S. DEPARTMENT OF HOMELAND SECURITY
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
ENFORCEMENT AND REMOVAL OPERATIONS
AND
TULSA COUNTY
CORRECTIONAL INSTITUTION

This Intergovernmental Service Agreement ("Agreement") is entered into between the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement ("**ICE**"), and the Tulsa County Board of County Commissioners on behalf of the Tulsa County Sherriff (**"Service Provider"**) for the detention and care of aliens ("**detainees**").  The term "Parties" is used in this Agreement to refer jointly to ICE and the Service Provider.

**FACILITY LOCATION:**

The Service Provider shall provide detention services for detainees at the following institution(s):

**David L. Moss Criminal Justice Center**
**300 North Denver Avenue**
**Tulsa, Oklahoma 74103**

The following documents are hereby incorporated directly or by reference:

- Intergovernmental Service Agreement (IGSA)
- ICE National Detention Standards (NDS) 2019
- Attachment 1 - Wage Determination Number: 2015-5318 Rev. 12
- Attachment 2 - Title 29, Part 4 Labor Standards for Federal Service Contracts
- Attachment 3 - Quality Assurance Surveillance Plan (QASP)
    - Attachment 3(a) – Performance Requirements Summary
    - Attachment 3(b) – Contract Discrepancy Report
- Attachment 4 - G-324B ORSA Detention Inspection Form Worksheet for IGSAs
- Attachment 5 - PREA Regulations
- Attachment 6 – G-391 Data Collection Categories and Descriptions
    - Attachment 6(a) – G-391 Transportation Data
- Attachment 7 – Anticipated Transportation Routes
- Attachment 8 - Quality Control Plan

CMF# 20202473

EXHIBIT 1

70CDCR21DIG000001

**IN WITNESS WHEREOF,** the undersigned, duly authorized officers, have subscribed their names on behalf of **Tulsa County** and Department of Homeland Security, U.S. Immigration and Customs Enforcement.

**ACCEPTED:**

**U.S. Immigration and Customs Enforcement**

**Ian Somppi**
**Contracting Officer**

Signature: _____

Date: 10/13/2020

**ACCEPTED:**

**Tulsa County**

**David L. Moss Criminal Justice Center**
**300 North Denver Avenue**
**Tulsa, Oklahoma 74103**

Chairperson, Board of County Commissioners of the County of Tulsa on behalf of the Tulsa County Sheriff

Signature: _____  Attest: _____
Stan Sallee, Chairman Pro Tem

Date: 10/5/2020

Approved as to form:
James G. Rea  Digitally signed by James G. Rea
              Date: 2020.10.02 09:19:59 -05'00'

Assistant District Attorney

STATE OF OKLAHOMA } SS
COUNTY OF TULSA

I, Michael Willis, Tulsa County Clerk, in and for the County and State above named, do hereby certify that the foregoing is a true and correct copy of a like instrument now on file in my office.

Dated the 23rd day of May, 2025
MICHAEL WILLIS, Tulsa County Clerk

_____
Deputy

CMF# 20202473

# Intergovernmental Service Agreement (IGSA)

## Table of Contents:

Article 1.  Purpose ................................................................................................................ 4
Article 2.  General ................................................................................................................ 5
Article 3.  Covered Services ................................................................................................ 5
Article 4.  Receiving and Discharging Detainees ................................................................ 7
Article 5.  ICE National Detention Standards (NDS) 2019 and Other Standards ................ 9
Article 6.  Medical Services ................................................................................................ 9
Article 7.  Employment Screening Requirements .............................................................. 16
Article 8.  Period of Performance ...................................................................................... 17
Article 9.  Inspections, Audit, Surveys, and Tours ............................................................ 17
Article 10.  Modifications and Disputes ............................................................................. 18
Article 11.  Adjusting the Bed Day Rate ............................................................................ 19
Article 12.  Enrollment, Invoicing, and Payment ............................................................... 20
Article 13.  Transportation ................................................................................................. 21
Article 14.  Contracting Officer's Representative (COR) .................................................. 25
Article 15.  Hold Harmless Provisions ............................................................................... 25
Article 16.  Financial Records ............................................................................................ 27
Article 17.  Labor Standards and Wage Determination ..................................................... 27
Article 18.  Notification and Public Disclosures ................................................................ 27
Article 19.  Incident Reporting ........................................................................................... 28
Article 20.  Detainee Privacy .............................................................................................. 29
Article 21.  Zero Tolerance for Sexual Harassment, Abuse, and Assault .......................... 29
Article 22.  Detainee Telephone Services (DTS) ............................................................... 30
Article 23.  Government Use of Wireless Communication Devices .................................. 31
Article 24.  Certified Cost and Pricing Data ...................................................................... 32
Article 25.  Combating Trafficking in Persons .................................................................. 39
Article 26.  Order of Precedence ........................................................................................ 41
Article 27.  Information Governance and Privacy ............................................................. 41
Article 28.  Quality Control ............................................................................................... 47
Article 29.  Quality Assurance Surveillance Program (QASP) ......................................... 48

70CDCR21DIG000001

**Article 1. Purpose**

   A. <u>Purpose:</u>  The purpose of this Intergovernmental Service Agreement (IGSA) is to establish an Agreement between ICE and the Service Provider for the detention and care of persons detained under the authority of the Immigration and Nationality Act, as amended.  All persons in the custody of ICE are "Administrative Detainees."  This term recognizes that ICE detainees are not charged with criminal violations and are only held in custody to assure their presence throughout the administrative hearing process and to assure their presence for removal from the United States pursuant to a lawful final order by the Immigration Court, the Board of Immigration Appeals, an authorized Executive Official, or other Federal judicial body.

   B. <u>Responsibilities:</u>  This Agreement sets forth the responsibilities of ICE and the Service Provider.  The Service Provider shall provide all personnel, management, equipment, supplies, and services necessary for performance of all aspects of the Agreement and ensure that the safekeeping, housing, subsistence, medical, and other program services provided to ICE detainees housed in the facility is consistent with ICE's civil detention authority, the PWS, IGSA requirements and ICE standards referenced in this agreement. The Agreement states the services the Service Provider shall perform satisfactorily to receive payment from ICE at the rate prescribed in Article I.C.

   C. <u>Rates:</u>   This is a fixed rate contract, not a cost reimbursable, with respect to the bed day rate for **approximately 36 detainees per month**.  ICE will be responsible for reviewing and approving the costs associated with this Agreement and subsequent modifications utilizing all applicable federal procurement laws, regulations and standards in arriving at the bed day rate.

| | |
|---|---|
| Bed Day Rate: | $69.00 per detainee |
| *Escort Services at Regular Rate: | $26.00 per hour |
| *Escort Services at Overtime Rate: | $39.00 per hour |
| *Stationary Guard at Regular Rate: | $26.00 per hour |
| *Stationary Guard at Overtime Rate: | $39.00 per hour |
| *Transportation Guard Rate (includes Health and Welfare): | $26.00 per hour |
| *Transportation Guard Overtime Rate: | $39.00 per hour |

*Note:  Updates to the U.S. Marshall Service (USMS) rate shall be incorporated into this agreement within 30 days of a signed copy of the USMS modification agreement being provided by the county to the Contracting Officer.*

If this IGSA contains a population guarantee, ICE will not be liable for any failure to meet the population guarantee if such failure directly results from an occurrence that impairs the ability to use the facility's capacity, and such occurrence arises out of causes beyond the control and without the fault or negligence of ICE.  Such causes may include, but are not limited to, acts of God or the public enemy, fires, floods, freight embargoes, court orders and severe or adverse weather.  This provision shall become effective only if ICE immediately notifies the Provider of the extent and nature of the occurrence resulting

4

70CDCR21DIG000001

in the failure and takes all reasonable steps to limit any adverse effects required by the occurrence.

**Article 2.  General**

   A. <u>Commencement of Services</u>:  ICE is under no obligation to utilize the facilities identified herein until the need for detention services has been identified, funding has been identified and made available, and the Facility meets ICE requirements, and is compliant with ICE National Detention Standards (NDS) 2019. Therefore, ICE may perform numerous assessments to ensure compliance prior to presenting detainees for housing.

   B. <u>Funding</u>:  The obligation of ICE to make payments to the Service Provider is contingent upon the availability of Federal funds.  ICE will neither present detainees to the Service Provider nor direct performance of any other services until ICE has the appropriate funding.  Orders will be placed under this Agreement when specific requirements have been identified and funding obligated.  Performance under this Agreement is not authorized until the Contracting Officer issues an order in writing.  The effective date of the services will be negotiated and specified in this Agreement.  The Service Provider shall be prepared to accept detainees immediately upon issuance of task order in accordance with the agreed upon ramp-up plan.

   C. <u>Subcontractors</u>:  The Service Provider shall notify and obtain approval from the ICE Contracting Officer if it intends to house ICE detainees in a facility other than the **David L. Moss Criminal Justice Center**. If either the Facility or any future facility is operated by an entity other than the Service Provider, ICE will treat the entity as a subcontractor to the Service Provider.  The Service Provider shall obtain the Contracting Officer's approval before subcontracting the detention and care of detainees to another entity.  The Contracting Officer has the right to deny, withhold, or withdraw approval of the proposed subcontractor.  Upon approval by the Contracting Officer, the Service Provider shall ensure that any subcontract includes all provisions of this Agreement, and shall provide ICE with copies of all subcontracts.  All payments will be made to the Service Provider.  ICE will not accept invoices from, or make payments to, a subcontractor.  Subcontractors that perform under this agreement are subject to the terms and conditions of this IGSA.

   D. <u>Consistent with Law</u>:  This is a firm fixed rate Agreement, not a cost reimbursable Agreement.  This Agreement is permitted under applicable statutes, regulation, policies or judicial mandates.  Any provision of this Agreement contrary to applicable statutes, regulation, policies or judicial mandates is null and void and shall not necessarily affect the balance of the Agreement.

**Article 3.  Covered Services**

   A. <u>Bedspace</u>:  The Service Provider shall provide **10 beds** to accommodate either male or female detainees on a space available basis for no more than seventy-two (72) hours. The Service Provider shall house all detainees as determined within the Service Provider's classification system. The facility shall be located within appropriate proximity and

5

70CDCR21DIG000001

    access to emergency services (medical, fire protection, law enforcement, etc.) ICE will be financially liable only for the actual detainee days as defined in Paragraph C of Article 3.

B. <u>Basic Needs</u>:  The Service Provider shall provide ICE detainees with safekeeping, housing, subsistence, medical and other services in accordance with this Agreement.  In providing these services, the Service Provider shall ensure compliance with all applicable laws, regulations, fire and safety codes, policies and procedures.  The types and levels of services shall be consistent with those the Service Provider routinely affords other inmates.

    If the Service Provider determines that ICE has delivered a person for custody who is under the age of eighteen (18), the Service Provider shall not house that person with adult detainees and shall immediately notify the ICE Contract Officer Representative (COR) or designated ICE official.  ICE will remove the juvenile as quickly as is reasonably possible.

C. <u>Unit of Service and Financial Liability</u>:  The unit of service is called a "Bed Day" and is defined as one person per day.  The bed day begins on the date of arrival.  The Service Provider may bill ICE for the date of arrival but not the date of departure.  The Service Provider shall not charge for costs that are not directly related to the housing and detention of detainees.  Such unallowable costs include but are not limited to:

1) Salaries of elected officials
2) Salaries of employees not directly engaged in the housing and detention of detainees
3) Indirect costs in which a percentage of all local government costs are pro-rated and applied to individual departments unless, those cost are allocated under an approved Cost Allocation Plan
4) Detainee services which are not provided to, or cannot be used by, Federal detainees
5) Operating costs of facilities not utilized by Federal detainees
6) Interest on borrowing (however represented), bond discounts, costs of financing/refinancing, except as prescribed by OMB Circular A-87.
7) Legal or professional fees (including legal expenses for prosecution of claims against the Federal Government, legal expenses of individual detainees or inmates)
8) Contingencies

    The Parties agree to base the cost of the bed day rate and all services provided on the principles of allowability and allocability as set forth in OMB Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments, federal procurement laws, regulations, and standards.

D. <u>Language Access Services</u>:  The Service Provider shall provide language access services, which include interpretation and translation services, for limited English proficient (LEP) detainees.  This should be accomplished through professional interpretation and

    translation or qualified bilingual personnel for necessary communication with detainees who do not read, speak, write, or understand English. Oral interpretation should be provided for detainees who are illiterate. Other than in emergencies, and even then only for that period of time before appropriate language services can be procured, detainees shall not be used for interpretation or translation services. The Service Provider shall also make special provisions for detainees who are illiterate.  The Service Provider should utilize commercial phone language interpretive services to ensure fulfillment of this requirement.   Upon request, ICE will assist the Service Provider in obtaining interpretation and translation services through a toll free line.  The Service Provider shall provide all instructions verbally, either in English or the detainees' language, as appropriate, to detainees who cannot read.

E. <u>Disability-Related Services:</u>  The Service Provider shall comply with Section 504 of the Rehabilitation Act of 1973 (Section 504), Title II of the Americans with Disabilities Act of 1990 (Title II), their implementing federal regulations, any other applicable disability-related federal law and state law, and its obligations under NDS 2019.  Specifically, the Service Provider shall ensure that its building and transportation services are physically accessible for detainees with disabilities.  Also, as required under applicable federal and state law and under NDS 2019, the Service Provider shall provide detainees with disabilities with accommodations, auxiliary aids, and modifications to policies, practices, and/or procedures to allow them an equal opportunity to access, participate in, or benefit from detention programs, services, and activities.  The Service Provider shall allow for effective communication with detainees with disabilities through the provision of accommodations and auxiliary aids, such as access to sign language interpretation services, as necessary.  In addition, deaf detainees shall have access to a TTY telephone and to sign language interpretation services.

F. <u>No ICE Liability for Failure to Meet Minimum Guarantee:</u>  ICE will not be liable for any failure to meet the minimum or population guarantee if such failure results directly from an occurrence that impairs the ability of ICE to use the facility's capacity, and such occurrence arises out of causes beyond the control and without the fault or negligence of ICE.  Such causes may include, but are not limited to, acts of God or the public enemy, fires, floods, freight embargoes, court orders and extraordinarily severe weather.  This provision becomes effective only if ICE immediately notifies the Provider of the extent and nature of the occurrence resulting in the failure and takes all reasonable steps to limit any adverse effects required by the occurrence.

**Article 4.  Receiving and Discharging Detainees**

A. <u>Required Activity:</u>  The Service Provider shall receive and discharge detainees only to and from properly identified ICE/ERO personnel or other properly identified Federal law enforcement officials with prior authorization from ICE/ERO.  Presentation of and satisfactory inspection of valid U.S. Government identification will constitute "proper identification."  The Service Provider shall furnish receiving and discharging services twenty-four (24) hours per day, seven (7) days per week.  ICE will furnish the Service Provider with reasonable notice of receiving and discharging detainees.  The Service

70CDCR21DIG000001

> Provider shall ensure positive identification and recording of detainees and ICE officers. The Service Provider shall not permit medical or emergency discharges except through coordination with on-duty ICE officers.

B. <u>Emergency Situations:</u>  ICE detainees shall not be released from the Facility into the custody of other non-ICE Federal, state, or local officials for any reason, except for medical or emergency situations, without express authorization of ICE.

C. <u>Restricted Release of Detainees:</u>  The Service Provider shall not release ICE detainees from its physical custody to any persons other than those described in Paragraph A of Article IV for any reason, except for either medical, other emergency situations, or in response to a federal writ of habeas corpus.  If an ICE detainee is sought for federal, state, or local proceedings, only ICE may authorize release of the detainee for such purposes. The Service Provider shall contact the COR or designated ICE official immediately regarding any such requests.

D. <u>Safe Release:</u>  The time, point and manner of release from a facility shall be consistent with safety considerations and shall take into account special vulnerabilities.  Facilities that are not within a reasonable walking distance of, or that are more than one mile from, public transportation shall transport detainees to local bus/train/subway stations prior to the time the last bus/train leaves such stations for the day. If public transportation is within walking distance of the detention facility, detainees shall be provided with an information sheet that gives directions to and describes the types of transportation services available.  However, facilities must provide transportation for any detainee who is not reasonably able to walk to public transportation due to age, disability, illness, mental health or other vulnerability, or as a result of weather or other environmental conditions at the time of release that may endanger the health or safety of the detainee.

   Upon release, detainees shall also be provided with a list of shelter services available in the immediate area along with directions to each shelter.  Prior to their release, detainees shall be given the opportunity to make one free phone call to a friend or relative to arrange for pick up from the facility.

E. <u>Service Provider Right of Refusal</u>.  The Service Provider retains the right to refuse acceptance of any detainee if such refusal is supported by a valid justification and agreed to by the COR.  ICE hereby agrees to the following examples of valid justification for refusal:  any detainee exhibiting violent or disruptive behavior, or any detainee found to have a medical condition that requires medical care beyond the scope of the Service Provider's health care provider.  In the case of a detainee already in custody, the Service Provider shall notify ICE and request such removal of the detainee from the Facility.  The Service Provider shall allow ICE reasonable time to make alternative arrangements for the detainee.  The Service Provider further has the right to refuse any person delivered by ICE who is under the age of eighteen and ICE shall remove such person, in accordance with Article 3.

70CDCR21DIG000001

   F. <u>Emergency Evacuation:</u>  In the event of an emergency requiring evacuation of the Facility, the Service Provider shall evacuate ICE detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority.  The Service Provider shall notify the COR or designated ICE official within two (2) hours of evacuation.

**Article 5.  ICE National Detention Standards (NDS) 2019 and Other Applicable Standards**

   A. The Service Provider shall house detainees and perform related detention services at a minimum in accordance with the NDS 2019 (https://www.ice.gov/detention-standards/2000) and the G-324B ORSA Detention Inspection Form Worksheet for IGSAs – Rev: 05/01/2012 Attachment 4, unless otherwise specified in this agreement. ICE Inspectors will conduct periodic inspections of the Facility to assure compliance with the applicable standards.

   B. If a change in the standards identified herein results in a documentable financial impact to the Service Provider, the Service Provider must notify the Contracting Officer within five (5) days of receipt of the change and request either 1) a waiver to the Standards or, 2) to negotiate a change in per diem.

   C. The Service provider shall also comply with the American Correctional Association (ACA) Standards for Adult Local Detention Facilities (ALDF), and Standards Supplement, Standards for Health Services in Jails, National Commission on Correctional Health Care (NCCHC). Some ACA standards are augmented by ICE Policy and/or procedure. The Service Provider shall also comply with the requirements of Subpart A of the U.S. Department of Homeland Security Regulation titled "*Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities*," title 6 Code of Federal Regulation (C.F.R.) part 115 (DHS PREA)/79 Fed. Reg. 13100 (Mar. 7, 2014), and Attachment 5 to this agreement.  If any requirements of the DHS PREA standards conflict with the terms of the NDS 2019, the DHS PREA standards shall prevail.

   D.  In cases where other standards conflict with ICE Policy or Standards, NDS 2019 Standards will prevail.

   E. The parties to this IGSA agree to enter into negotiations if and when the ICE Detention Standards are updated. This Agreement will be modified in writing upon mutual agreement.

**Article 6.  Medical Services**

   A. If it is determined that ICE Health Service Corps will not provide direct patient care services at this location, the Service Provider shall be responsible for providing health care services for ICE detainees at the Facility in accordance with NDS 2019 and/or the ICE Family Residential Standards, including but not limited to; intake arrival screening, infectious disease screening and treatment, emergent, acute and chronic care, on-site sick