## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SALVADOR F.-G., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. 25-CV-0243-CVE-MTS |
| | ) |
| KRISTI L. NOEM, Secretary of | ) |
| the United States Department of | ) |
| Homeland Security, | ) |
| JOSHUA JOHNSON, Acting Field | ) |
| Officer of Immigrations and Customs | ) |
| Enforcement, Enforcement and Removal | ) |
| Operation, Dallas Field Office, | ) |
| VIC REGALADO, Tulsa County Sheriff, | ) |
| | ) |
| Respondents. | ) |

## OPINION AND ORDER

Petitioner Salvador F.-G., a native and citizen of Mexico, presently is detained at the David

L. Moss Criminal Justice Center, in Tulsa, Oklahoma (the Tulsa County jail), under the custody

of Immigration and Customs Enforcement (ICE), an operational component of the Department of

Homeland Security (DHS).  He petitions for a writ of habeas corpus, under 28 U.S.C. § 2241, and

seeks injunctive relief, claiming that he is detained in violation of his Fifth Amendment right to

due process and in violation of federal law governing the pre-removal detention of noncitizens.

Dkt. # 1.  Respondents Kristi L. Noem, Secretary of the DHS, and Joshua Johnson, Acting Field

Officer of ICE's Dallas Field Office, urge the Court to dismiss or deny the petition because

petitioner's detention is authorized by 8 U.S.C. § 1226(a) and he did not exhaust available

administrative remedies by asking an immigration judge to release him on bond before filing the

petition.  Dkt. ## 10, 17.  Respondent Vic Regalado, Sheriff of Tulsa County, moves the Court to

dismiss him from this action as an improper respondent.  Dkt. ## 11.  Because Sheriff Regalado is

petitioner's immediate physical custodian, the Court finds that he is a proper respondent in this action and denies his motion to dismiss. However, because petitioner has not shown that his detention violates the Constitution or federal law, the Court dismisses in part and denies in part the petition.

## I.    Background

Petitioner entered the United States without inspection in May 1992. Dkt. # 1, at 2; Dkt. # 10-1, at 2.[1]  In April 2012, he was a passenger in a vehicle that was stopped by a Texas law enforcement officer. Dkt. # 1, at 3-4; Dkt. # 10-1, at 2; Dkt. # 12, at 3. The officer arrested petitioner, but did not charge him with a crime, and transferred him to ICE custody. Id. ICE issued petitioner a Notice to Appear (NTA) on April 11, 2012. Dkt. # 10-1, at 2. The NTA charged petitioner with removability because he had entered the country without inspection, in violation of 8 U.S.C. § 1182(a)(6)(A)(i),[2] and ICE detained him without bond. Dkt. # 10-1, at 2. Following a bond hearing in May 2012, an immigration judge granted petitioner's request for a change in custody and ordered him released on a $5,500 bond. Dkt. # 1, at 4; Dkt. # 10-1, at 2; Dkt. # 12-5. Petitioner posted bond and was released from custody. Dkt. # 1, at 4; Dkt. # 10-1, at 2.

Petitioner's removal case has been pending since 2012, his case was transferred to the immigration court in Dallas in 2014, and he is not subject to a final removal order. Dkt. # 1, at 4; Dkt. # 10-1, at 2, 4. Since 2012, petitioner has complied with the conditions of his bond. Dkt. #

---

[1] For consistency, the Court's citations refer to the CM/ECF header pagination. The Court includes in the background section facts drawn from the petition (Dkt. # 1), Johnson's declaration (Dkt. # 10-1), and the reply (Dkt. # 12). Unless otherwise noted, these facts are undisputed.

[2] Subject to an exception that does not apply here, a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the [DHS Secretary], is inadmissible" and removable. 8 U.S.C. § 1182(a)(6)(A)(i); see also 8 U.S.C. § 1227(a) (describing classes of noncitizens who are removable); Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021) (discussing initiation of removal process through issuance of notice to appear).

1, at 4; Dkt. # 12, at 4; Dkt. # 18, at 2.  He also has sought lawful admission to the United States.

Petitioner applied for cancellation of removal and adjustment of status for certain nonpermanent

residents by filing an EOIR-42B form with the United States Citizenship and Immigration Services

(USCIS) in September 2012, and he submitted that application to the immigration court in

November 2015.  Dkt. # 10-1, at 3; Dkt. # 12-1.  Petitioner applied to register permanent residence

or adjust status by filing an I-485 form with USCIS in May 2018, and he submitted that application

to the immigration court in January 2019.  Dkt. # 10-1, at 3; Dkt. # 12-2.  "[I]n 2020 or 2021, the

immigration court took [petitioner's] case off the court's active docket."  Dkt. # 10-1 at 3.[3]  USCIS

issued work permits to petitioner on July 29, 2022, and on August 28, 2024.  Dkt. # 12, at 5; Dkt.

# 12, at 5; Dkt. # 12-3.[4]

In August 2024, ICE's Enforcement and Removal Operations (ERO) determined that

USCIS administratively closed petitioner's September 2012 application in July 2024. Dkt. # 10-1,

at 3; Dkt. # 17 at 3.  On April 18, 2025, petitioner's bond obligor received a "Notice to Deliver

Alien," requiring petitioner to report to the ICE office in Tulsa, Oklahoma.  Dkt. # 10-1, at 3; Dkt.

# 1, at 5.  ICE issued this notice based on the change in circumstances resulting from the July 2024

administrative closure of the September 2012 application.  Dkt. # 10-1, at 3; Dkt. # 17, at 3.  When

petitioner appeared at the ICE office in Tulsa on May 14, 2025, he was taken into custody and was

told that his bond had been revoked.  Dkt. # 10-1, at 3; Dkt. # 1, at 5.  Since May 14, 2025,

petitioner has been detained at the Tulsa County jail, a correctional center that contracts with the

---

[3] Petitioner submitted a printout from an online portal maintained by the United States Department of Justice's Executive Office for Immigration Review (EOIR) showing that his case is pending in immigration court with no hearings scheduled as of May 27, 2025.  Dkt. # 12-4.

[4] "Regulation 8 C.F.R. § 274a.12(c)(9) specifically allows adjustment of status applicants . . . to request employment authorization while their application is pending."  Guevara v. Holder, 649 F.3d 1086, 1092 (9th Cir. 2011).

federal government to provide temporary housing for noncitizen detainees in ICE custody.  Dkt. # 1, at 5; Dkt. # 11-1; Dkt. # 10-1, at 4.

Petitioner filed the petition on May 16, 2025, respondents responded to the petition on May 23, 2025 (Dkt. ## 10, 11), and petitioner replied on May 27, 2025 (Dkt.  #12).  On preliminary review of the case materials, the Court directed petitioner and respondents Noem and Johnson to simultaneously file supplemental briefs clarifying the statutory basis for petitioner's detention. Dkt. # 14.  Those briefs were filed on June 6, 2025 (Dkt. ## 17, 18).

## II.    Discussion

### A.    Motion to dismiss party

Respondent Regalado seeks dismissal from this action, asserting that he is not a proper respondent because he is not petitioner's "immediate custodian."  Dkt. # 11.  Regalado contends that petitioner is housed at the Tulsa County jail pursuant to an agreement that Tulsa County has with the DHS to provide temporary housing for noncitizen detainees.  Dkt. # 11, at 2; Dkt. # 11-1. He alleges that he "does not have authority to determine or modify the conditions or duration of [p]etitioner's immigration detention" and that "[a]ny actions regarding release, transfer, or removal are under the exclusive jurisdiction of ICE or DHS."  Dkt. # 11, at 4.  Petitioner opposes dismissal, primarily asserting that Regalado's argument "oversimplifies the analysis" of whether he is a proper respondent in this action.  Dkt. # 12, at 12-13.

Under 28 U.S.C. § 2242, a petitioner seeking a writ of habeas corpus must identify in the petition "the name of the person who has custody over him and by virtue of what claim or authority."  When a habeas petitioner "challenges [his] present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).  The Padilla Court stated that "in challenges to

present physical confinement . . . the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent."  542 U.S. at 439; see also id. at 435 ("We summed up the plain language of the habeas statute over 100 years ago in this way:  '[T]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.'" (alteration and emphasis in original) (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885))).

Courts are divided as to how the immediate custodian rule applies to noncitizen detainees. Compare Doe v. Garland, 109 F.4th 1188, 1197 (9th Cir. 2024) (considering several arguments against applying Padilla in habeas action filed by noncitizen detainee and rejecting them because "Padilla set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."); and al-Marri v. Rumsfeld, 360 F.3d 707, 708 (7th Cir. 2004) (explaining, in a habeas action brought by a petitioner detained as an enemy combatant, that "for an inmate of a brig, jail, or prison the "custodian" is the person in charge of that institution" and concluding that the proper respondent was the commander of the brig where the petitioner was detained); with Arias v. Decker, 459 F. Supp. 3d 561, 568 (S.D.N.Y. 2020) (collecting cases, rejecting federal officials' argument that noncitizen detainee should name as respondent the warden of the county jail, and reasoning that ICE field office director was the proper respondent); You v. Nielsen, 321 F. Supp. 3d 451, 461 (S.D.N.Y. 2018) (stating that "it is an open question whether Padilla applies" in a habeas action brought by an noncitizen detained by federal officials and housed in a county jail and concluding that the petitioner's "immediate custodian is not the warden of the Bergen County Jail, but, in fact, ICE officials located in this district"); and Sanchez-

Penunuri v. Longshore, 7 F. Supp. 3d 1136, 1145 (D. Colo. 2013) (observing that "the ICE District Director is the only official who appears authorized by regulation to make custody decisions for immigration detainees").

For three reasons, the Court finds it unnecessary to choose a side on this issue. First, petitioner named both his immediate physical custodian (Sheriff Regalado) and his immediate legal custodian (Acting Field Director Johnson). Based on this Court's review of several cases addressing this issue, this was a safe bet because, had petitioner named only one or the other, the government may have sought dismissal for failure to name the proper respondent. See, e.g., Arias, 459 F. Supp. 3d at 567 ("Respondents contend that Petitioners' immediate custodian is the warden of the Essex County Jail, the facility that housed them."); Sanchez-Penunuri, 7 F. Supp. 3d at 1145-46 & n.12 (gathering cases and discussing federal officials' shifting positions regarding application of the immediate custodian rule in habeas actions filed by noncitizen detainees). Second, the plain language of the contractual agreement Sheriff Regalado submitted in support of his motion suggests that he may have limited authority to release a noncitizen detainee if ordered to do so through a federal writ of habeas corpus:

> The Service Provider shall not release ICE detainees from its physical custody to any persons other than those described in Paragraph A of Article IV for any reason, *except* for either medical or other emergency situations, *or in response to a federal writ of habeas corpus.* If an ICE detainee is sought for federal, state, or local proceedings, only ICE may authorize release of the detainee for such purposes. The Service Provider shall contact the COR or designated ICE official immediately regarding any such requests.

Dkt. # 11-1, at 8 (emphases added). Third, as discussed next, resolving who is or is not a proper respondent is largely an academic exercise because petitioner has made the showings necessary to obtain a writ of habeas corpus. For these reasons, the Court denies the motion to dismiss party (Dkt. # 11).

**B.      Petition**

Petitioner contends that he is detained in violation of his Fifth Amendment right to due process and in violation of federal law, and he primarily seeks either a writ of habeas corpus or a preliminary injunction ordering his immediate release from custody.  Dkt. # 1, at 5, 10-12; Dkt. # 12, at 14.[5]  Respondents Noem and Johnson (collectively, "respondents") contend that petitioner is lawfully detained pending a final determination as to whether he should be removed, and that the petition should be dismissed for lack of jurisdiction because he did not exhaust available administrative remedies by asking an immigration judge to release him on bond before he filed the petition.  Dkt. ## 10, 17.

**1.      Statutory law governing pre-removal detention**

Before addressing the parties' arguments, the Court finds it helpful to provide an overview of the statutory law governing the pre-removal detention of noncitizens.  It is undisputed that petitioner is detained under 8 U.S.C. § 1226(a).  Dkt. ## 17, 18.

> Section 1226(a) contains two sentences, one dealing with taking an alien into custody and one dealing with detention.  The first sentence empowers the Secretary of Homeland Security to arrest and hold an alien "pending a decision on whether the alien is to be removed from the United States."  The second sentence generally gives the Secretary the discretion either to detain the alien or to release him on bond or parole.  If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge (both exercising power delegated by the Secretary), see 8 CFR §§ 236.1(c)(8) and (d)(1), 1003.19, 1236.1(d)(1) (2018); and the alien may secure his release if he can

_____

[5]  In support of his request for a preliminary injunction, petitioner states (without elaboration) in the conclusion paragraph of the petition that he has made the showings necessary to obtain preliminary injunctive relief.  Dkt. # 1, at 11-12.  Respondents Noem and Johnson disagree that petitioner has made the showings necessary to obtain preliminary injunctive relief and urge the Court to deny his request for a preliminary injunction.  Dkt. # 10, at 8-11.  But petitioner's only discernible request for relief is release from custody.  And, if he establishes that his detention violates the Fifth Amendment or federal law, release from custody—the same relief he appears to seek through his request for an injunction—is available through § 2241(c)(3).  Under these circumstances, the Court declines to separately evaluate his undeveloped request for a preliminary injunction.

convince the officer or immigration judge that he poses no flight risk and no danger to the community.  See §§ 1003.19(a), 1236.1(d); Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006).

Nielsen v. Preap, 586 U.S. 392, 397-98 (2019) (footnotes omitted);[6] see also Matter of Adeniji, 22 I. & N. Dec. 1102, 1111-13 (1999) (interpreting 8 C.F.R. § 236.1(c)(8) as placing the burden of proof on the noncitizen to show "to the satisfaction of" the immigration judge and the Bureau of Immigration Appeals (BIA), that the noncitizen's release would not pose a danger to the community and that the noncitizen is likely to appear for any future immigration proceeding). Either party may appeal the immigration judge's bond determination to the BIA.  See 8 C.F.R. §§ 1003.19, 1003.38, 1236.1(d).

Section 1226(b) provides that DHS "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."  8 U.S.C. § 1226(b); see also 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officers] in which event the alien may be taken into physical custody and detained.  If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.").  "[N]otwithstanding the breadth of [§1226(b)'s] statutory language, the [BIA] has recognized an important implicit limitation on DHS's authority.  The BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'"  Saravia v. Sessions, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (quoting

---

[6] The plain language of § 1226 refers to the Attorney General, but "Congress has empowered the Secretary [of DHS] to enforce the Immigration and Nationality Act . . . though the Attorney General retains the authority to administer removal proceedings and decide relevant questions of law."  Nielsen, 586 U.S. at 397 n.2.

Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).[7]

If DHS revokes a bond and decides to detain a noncitizen under § 1226(a), the noncitizen may request a custody redetermination from an immigration judge and, if necessary, may appeal the immigration judge's ruling to the BIA.  See 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released.  Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter."); Sugay, 17 I. & N. Dec. at 639-40 (reasoning that after a district director has revoked a bond issued by an immigration judge and set a new bond, a noncitizen may "again appeal the amount of the bond set by the District Director, thus assuring that the District Director does not act arbitrarily or capriciously").

## 2.      Jurisdiction and exhaustion

Federal courts have jurisdiction to grant a writ of habeas corpus to a petitioner who demonstrates that he is in federal custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).  When the petitioner is a noncitizen detained by immigration authorities, Congress has placed various limits on the exercise of this jurisdiction.  See 8 U.S.C.

---

[7] In Saravia, DHS informed the federal district court that "DHS has incorporated [Sugay's] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer."  Saravia, 280 F. Supp. 3d at 1197.

§§ 1226(e), 1252.[8]  Nonetheless, federal courts retain jurisdiction under § 2241 to review habeas claims by noncitizen detainees who either challenge their detention as unconstitutional or raise questions of law regarding the extent of the government's statutory authority to detain them.  See, e.g., Dep't of Homeland Sec. v. Regents of the Univ. of Cali., 591 U.S. 1, 19 (2020) (explaining that § 1252(b)(9) "is certainly not a bar where . . . the parties are not challenging any removal proceedings"); id. at 20 (concluding that § 1252(g) "limits review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders'" but does not "cover 'all claims arising from deportation proceedings'"); Demore v. Kim, 538 U.S. 510, 517 (2003) (holding, in a case involving a noncitizen's challenge to mandatory pre-removal detention, that § 1226(e) "contains no explicit provision barring habeas review, and . . . that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail"); Ozturk v. Hyde, 136 F.4th 382, 394-401 (2d Cir. 2025) (thoroughly discussing § 1252's jurisdiction-stripping provisions and finding that none barred habeas review of the petitioner's "challenges [to] her unlawful detention, pending [removal] proceedings" and relying on Demore and Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020), to conclude that § 1226(e) does not bar habeas review of constitutional claims or questions of law); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (concluding that § 1226(e) "deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions").  To the extent petitioner's claims challenge his detention as unconstitutional and challenge the extent of DHS's

---

[8] Petitioner contends that the "jurisdiction-stripping provisions" of § 1252 do not apply in this case. Dkt. # 1, at 7-8.  Respondents do not suggest otherwise; rather, their only "jurisdictional" argument is that petitioner's failure to exhaust administrative remedies deprives this Court of subject-matter jurisdiction. Dkt. # 10, at 6-8.  Despite the parties' limited jurisdictional arguments, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

statutory authority to revoke a bond issued by an immigration judge, the Court finds that it has subject-matter jurisdiction.[9]

Further, contrary to respondents' position, petitioner's failure to exhaust administrative remedies does not deprive this Court of subject-matter jurisdiction over his constitutional and statutory claims. Generally, "[t]he exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although . . . the statute itself does not expressly contain such a requirement." Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010). But "[e]xhaustion is typically nonjurisdictional," and courts "treat a rule as jurisdictional only if Congress clearly states that it is." Santos-Zacaria v. Garland, 598 U.S. 411, 416-17 (2023) (cleaned up). As Garza acknowledges, § 2241 contains no clear statement requiring exhaustion before filing a federal habeas petition. 28 U.S.C. § 2241; Garza, 596 F.3d at 1203. Likewise, § 1226 contains no clear rule that requires exhaustion of administrative remedies. 8 U.S.C. § 1226. In contrast, "[u]nder 8 U.S.C. § 1252(d)(1), a noncitizen who seeks to challenge an order of removal in court must first

---

[9] However, to the extent petitioner's claims could be understood as challenging the discretionary decisions made by DHS to revoke his bond and detain him without bond given his specific circumstances, the Court finds that § 1252(a)(2)(B)(ii) and § 1226(e) bar habeas review. Section 1252(a)(2)(B)(ii) bars habeas review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title" "and regardless of whether the . . . decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B)(ii); see Mwangi v. Terry, 465 F. App'x 784, 786-87 (10th Cir. 2012) (concluding that § 1226(e) bars habeas review when the DHS Secretary exercises discretion under § 1226 and that § 1252(a)(2)(B)(ii) bars habeas review "to the extent [a habeas petitioner] challenges the agency's discretionary bond decision"); Hamilton v. Gonzales, 485 F.3d 564, 567 & n.6 (10th Cir. 2007) (stating that "[s]ection 1252(a)(2)(B) strips jurisdiction over decisions committed to agency discretion regardless of whether the decision is made in the removal process" and noting that "conditional terms such as 'may' and 'at any time,' are "indicative of administrative discretion"). For that reason, the Court dismisses the petition in part, without prejudice and for lack of jurisdiction, as to any claims therein that could be understood as seeking habeas review of discretionary decisions made by DHS to revoke petitioner's bond and to detain him pending conclusion of his removal proceedings.

exhaust certain administrative remedies." Santos-Zacaria, 598 U.S. at 413 (2023); see 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."). This statute does not apply here, because petitioner does not challenge a final order of removal. See Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (reasoning that exhaustion provision § 1252(d)(1) does not cover challenges to preliminary custody or bond determinations, which are distinct from final orders of removal). But even § 1252(d)(1) "lacks the clear statement necessary to qualify as jurisdictional." Santos-Zacaria, 598 U.S. at 417. Rather, this provision "imposes an exhaustion requirement, which is a quintessential claim-processing rule." Id. Respondents generally assert that a habeas petitioner must exhaust administrative remedies and rely on cases decided before Santos-Zacaria to suggest that the exhaustion requirement is jurisdictional. Dkt. # 10, at 6-8. But they fail to identify any statutory provision relevant to this case that imposes a nonjurisdictional claim-processing rule, much less a jurisdictional rule that requires exhaustion. Dkt. # 10, at 6-8. The Court likewise has found no clear statement from Congress that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention § 1226(a). Thus, in this case, any "exhaustion requirement is prudential, rather than jurisdictional." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). When exhaustion is non-jurisdictional, a court may excuse a failure to exhaust for various reasons, including futility, Garza, 596 F.3d at 1203, or "where . . . an agency may not be empowered to grant relief, for example 'because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute,'" Hettinga v. United States, 560 F.3d 498, 503 (D.C. Cir. 2009). See also L.G. v. Choate, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) ("When Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required."); Lopez v. Barr,

458 F. Supp. 3d 171, 176 (W.D.N.Y. 2020) (noting that "courts can excuse a failure to exhaust if the case presents a substantial constitutional question").  Petitioner asks this Court to consider the extent of DHS's authority under § 1226, and whether existing administrative procedures for bond hearings comport with the Fifth Amendment.  Under these circumstances, the Court is not persuaded that exhaustion should be required.

> 3.  **Analysis**

>> a.  **Statutory claim**

Petitioner's statutory claim has developed over time.  In his petition, he asserts, without elaboration, that "ICE does not have authority to unilaterally revoke a bond set by an Immigration Judge." Dkt. # 1, at 5.  In his reply, he contends that § 1226(b), which permits DHS to revoke a bond "at any time," "only applies" when DHS has released a noncitizen on bond under § 1226(a), not when an immigration judge has released the noncitizen on bond after a bond hearing.  Dkt. # 12, at 8.  He nonetheless appears to qualify that argument and relies on Sugay to argue that "[w]hat DHS cannot lawfully do is unilaterally revoke the [immigration judge's] bond unless there has been a 'change in circumstances."  Dkt. # 12, at 3, 9-10.  In his supplemental brief, petitioner acknowledges that DHS's "authority to re-detain under § 1226(a) is found in 8 U.S.C. § 1226(b) and 8 C.F.R. 242.2(c) [now 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9)], which gives DHS the authority to revoke a noncitizen's bond 'at any time,' even if that individual has previously been released." Dkt. # 18, at 2.  And, in his conclusion paragraph, he frames the question before this Court as: "Must the government establish the existence of materially changed circumstances before it can exercise its authority to re-detain under 8 U.S.C. § 1226(b)?"  Id. at 6.

As the Court understands this claim, petitioner thus questions the extent of DHS's authority under § 1226(b) to revoke a bond issued by an immigration judge after a bond hearing. The relevant statutory provisions state:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

(1) may continue to detain the arrested alien; and

(2) may release the alien on--

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

8 U.S.C. § 1226(a)-(b). The relevant regulations provide that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

As previously discussed, the BIA has considered a question nearly identical to the one framed by petitioner.  In <u>Sugay</u>, the noncitizen "question[ed] the authority of the District Director to revoke a bond where the alien has already had a bond redetermination hearing and the facts and underlying circumstances of the case are virtually identical as they were at the time of the original hearing."  <u>Sugay</u>, 17 I. &. N. Dec. at 638.  The BIA stated, in relevant part,

> We find without merit counsel's argument that the District Director was without authority to revoke bond once an alien has had a bond redetermination hearing.  8 C.F.R. 242.2(c) [now 8 C.F.R. § 236.1(c)(9)] clearly states that "[w]hen an alien, who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the District Director . . . , in which event the alien may be taken into physical custody and detained."  Counsel's contention that this power could "undermine the impartial and independent decision of the immigration judge under section 242.2(b)" because "it gives the District Director the opportunity to avoid ever having to file an appeal, since he can always revoke a bond redetermined by the judge" is addressed in the second part of the above-quoted code section. "The provisions of paragraph (b) of this section shall govern availability to the respondent of recourse to other administrative authority for release from custody."  <u>See</u> 8 C.F.R. 242.2(c) [now 8 C.F.R. § 236.1(c)(10)]. The alien may, as he did in this case, again appeal the amount of bond set by the District Director, thus assuring that the District Director does not act arbitrarily or capriciously.

> While we recognize counsel's argument that where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance, we find in the instant case that the newly developed evidence brought out at the deportation hearing, combined with the fact that the respondent has been ordered deported and his applications for suspension and withholding of deportation were denied, represent a considerable change in circumstances which justify the District Director's decision to raise the amount of bond.

<u>Sugay</u>, 17 I. & N. Dec. at 639-40.

Respondents contend that "[t]he statutory language of § 1226(b) is clear and unambiguous" and provides ICE authority to revoke a bond even if the bond has been set by an immigration judge. Dkt. # 10, at 4.  They further contend that this point "is well established and beyond dispute"

considering <u>Sugay</u> and <u>Matter of Valles-Perez</u>, 21 I. & N. Dec. 769, 772 (BIA 1997).[10]  <u>Id.</u>  Lastly, respondents assert that the BIA "has never explicitly limited the regulation to mean that DHS may revoke bond only where there are changed circumstances relating to the bond decision" and characterize the BIA's reference to a change in circumstances as simply acknowledging an argument made in that case.  <u>Id.</u> at 5.

On careful consideration of the statute, the implementing regulations, and the BIA's decisions in <u>Sugay</u> and <u>Valles-Perez</u>, the Court rejects petitioner's claim that the DHS has no authority to revoke a bond issued by an immigration judge.  The plain language of § 1226(b) provides DHS broad authority:  "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."  8 U.S.C. § 1226(b).  True, as petitioner argues, this language refers to "a bond or parole authorized under subsection (a)."  Dkt. # 12, at 8.  But the Court disagrees with petitioner's position that the only bond "authorized under subsection (a)" is the first bond, if any, that is issued by DHS before any bond redetermination by an immigration judge.  <u>Id.</u>  Subsection (a) authorizes DHS to detain noncitizens during the pre-removal period and, except for those noncitizens described in subsection (c) authorizes DHS to release noncitizens on bond or conditional parole.  8 U.S.C. § 1226(a).  Other than setting a minimum bond amount, subsection (a) largely leaves the details of bond and conditional parole to the discretion of DHS.  <u>Id.</u>  Thus, a bond "authorized under subsection (a)" simply refers to a bond issued to a noncitizen who is eligible for release at DHS's discretion.  Subsection (b) therefore broadly authorizes DHS to revoke a bond issued to a

---

[10]  In <u>Valles-Perez</u>, the BIA cited <u>Sugay</u> and the language now found in 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) when it stated that "the regulations presently provide that when an alien has been released following a bond proceeding, a district director has continuing authority to revoke or revise the bond, regardless of whether the Immigration Judge or this Board has rendered a bond decision."  <u>Valles-Perez</u>, 21 I. & N. Dec. at 772.

noncitizen who is eligible for release under subsection (a), regardless of whether the bond is issued by a DHS officer or by an immigration judge. And, while BIA decisions are not binding on this Court, the Court finds that <u>Sugay</u> and <u>Vallez-Perez</u> reasonably read § 1226(b) and the language now found in 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) as permitting DHS broad authority to revoke a bond, even one issued by an immigration judge. <u>Valles-Perez</u> is persuasive on this point because there, the BIA explained that "bond proceedings differ greatly from other immigration proceedings" and a noncitizen "remains free to request a bond redetermination at any time without a formal motion, without a fee, and without regard to filing deadlines, so long as the underlying deportation proceedings are not administratively final." 21 I. & N. Dec. at 771 & n.2. Thus, as respondents state, and as petitioner acknowledges, a noncitizen who is re-detained after DHS exercises its broad authority to revoke a bond—even one issued by an immigration judge—may (again) seek a custody redetermination from an immigration judge and may appeal an adverse decision to the BIA. Dkt. # 10, at 4; Dkt. # 18, at 3.

The only remaining question, according to petitioner, is whether DHS is required to "establish the existence of materially changed circumstances before it can exercise its authority to re-detain under 8 U.S.C. § 1226(b)." Dkt. # 18, at 6. It is not entirely clear whether petitioner raises this question as part of his statutory claim or as part of his Fifth Amendment due process claim. <u>Id.</u> However, to the extent this is part of his statutory claim, the Court finds nothing in the plain language of subsection (b) imposing a requirement of changed or materially changed circumstances. Rather, as previously stated, DHS "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). The implementing regulation is likewise broad, providing that when a noncitizen has been released, "such release may be revoked at any time in the discretion of the

district director [and certain other officials], in which event the alien may be taken into physical custody and detained."  8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).  Nothing in the statute or the regulation even hints at a change in circumstances requirement.  Even accepting that the BIA chose to impose that requirement in Sugay and that the DHS typically applies that requirement when it exercises its discretionary authority under § 1226(b), the Court has no authority to read that requirement into the clear and unambiguous language of the statute.  See Johnson v. Arteaga-Martinez, 596 U.S. 573, 582 (2022) (explaining that federal agencies "are free to grant additional procedural rights in the exercise of their discretion" whereas reviewing courts "are generally not free to impose them if the agencies have not chosen to grant them" (quoting Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978))).  As a matter of statutory interpretation then, the Court finds no support for imposing a "change in circumstances" requirement on DHS before it can revoke a bond under § 1226(b).  The Court therefore denies the petition as to petitioner's statutory claim.

### b.    Constitutional claim

Petitioner also raises a constitutional claim.  As the Court understands it, this claim asserts that a bond hearing for a noncitizen detained under 8 U.S.C. § 1226(a), following DHS's revocation of a bond under 8 U.S.C. § 1226(b), does not comport with the Fifth Amendment's guarantee of procedural due process unless:  (1) the immigration judge enforces Sugay's "change of circumstances" requirement and requires DHS to establish a material change in circumstances to support revocation of the noncitizen's bond, and (2) the immigration judge refuses to enforce Adeniji and instead shifts the burden of proof to the government to show, by clear and convincing evidence, that the noncitizen's release would pose a danger to the community and that the

noncitizen is not likely to appear for any future immigration proceeding.  Dkt. # 1, at 10; Dkt. # 12, at 11; Dkt. # 18, at 3-6.

For one reason, the Court dismisses the petition as to petitioner's constitutional claim:  this claim was not identified in the petition and is not adequately briefed.  In the petition, petitioner asserted that his "prolonged detention and possible removal is no longer justified under the Constitution"; suggested that he would be "removed to Texas and then removed to Mexico" and likely without "any due process"; and that his "unlawful detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution as the Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law."  Dkt. # 1, at 2, 5, 10.  In his reply, petitioner primarily focused on his statutory claim, suggested that respondents' misunderstanding of his pending matters before the immigration court "raises due process concerns," discussed Sugay's change of circumstances requirement in the context of the statutory claim, and asserted that "[t]here is no guarantee, despite statutory and precedential case law, that [he] will receive due process."  Dkt. # 12, at 1-3, 8-11.  In his supplemental brief, petitioner explained, for the first time, that a new bond hearing would violate his constitutional right to due process because:  (1) the immigration judge would follow Adeniji and place burden of proof on petitioner, when due process requires the government to bear that burden; and (2) "it is likely that the government will continue to argue that there is no requirement that it demonstrate materially changed circumstances before it exercises its power to re-detain," so the immigration judge might not enforce Sugay's change of circumstances requirement.  Dkt. # 18, at 3-5.  Not surprisingly, neither the respondents' response nor their supplemental brief grapples with petitioner's belated constitutional claim or with the cases petitioner cites to support that claim.  Dkt. ## 10, 17.

19

At bottom, petitioner asks this Court to blindly "follow the lead of sister courts within the Tenth Circuit that have placed the burden on the government to justify detention in analogous circumstances" and to "follow the lead of district courts in the Ninth Circuit[] that have treated Sugay's instruction as a mandatory requirement," all without the benefit of adequate briefing.[11] The Court declines to do so and thus dismisses the petition, without prejudice, as to the constitutional claim.[12]

## IV.    Conclusion

Based on the foregoing, the Court concludes that petitioner has not shown that he is detained in violation of the Constitution or in violation of federal law and thus has not shown that relief is warranted under 28 U.S.C. § 2241 or that he should be granted preliminary injunctive relief mandating his immediate release from detention.

---

[11] Notably absent from petitioner's supplemental brief is any citation to contrary authority that this Court has found through its independent research. See, e.g., Basri v. Barr, 469 F. Supp. 3d 1063, 1073-74 (D. Colo. 2020) ("The Supreme Court has been clear and consistent that the Constitution requires lesser procedural protections for aliens subject to removal, and a concomitantly lesser role for judicial intervention in the detention process. A particular allocation of the burden of proof based on a judicial presumption that detention is illegal unless proven otherwise isn't one of those protections."); Lopez, 458 F. Supp. 3d at 179 (concluding that "neither Section 1226(a) nor the Due Process Clause requires that a clear and convincing evidence standard be placed on the government in bond hearings"). The Supreme Court also has cautioned lower courts against reading into immigration statutes various procedural requirements that do not appear in the plain statutory language. See, e.g., Johnson, 596 U.S. at 581 ("On its face, the statute says nothing about bond hearings before immigration judges or burdens of proof, nor does it provide any other indication that such procedures are required. Faithfully applying our precedent, the Court can no more discern such requirements from the text of § 1231(a)(6) than a periodic bond hearing requirement from the text of § 1226(a). Section 1231(a)(6) therefore cannot be read to incorporate the procedures imposed by the courts below as a matter of textual command." (internal citation omitted)); Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) ("[W]e hold that there is no justification for any of the procedural requirements that the Court of Appeals layered onto § 1226(a) without any arguable statutory foundation.").

[12] Petitioner, who is represented by counsel, focuses on the alleged constitutional inadequacies of a new bond hearing that has not yet been held and does not develop any other discernible argument to meet his burden to show that his present detention, under 8 U.S.C. § 1226(a), violates his Fifth Amendment right to due process.

**IT IS THEREFORE ORDERED** that Sheriff Regalado's motion to dismiss party (Dkt. # 11) is **denied**.

**IT IS FURTHER ORDERED** that petitioner's emergency petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and injunctive relief (Dkt. # 1) is **dismissed in part and denied in part**, and a separate judgment shall be entered in this matter.

**DATED** this 12th day of June, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE